IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: AMERICAN MEDICAL SYSTEMS, INC.
        PELVIC REPAIR SYSTEMS
          PRODUCT LIABILITY LITIGATION        MDL No. 2325

----------------------------------------------------------------
THIS ORDER RELATES ONLY TO CIVIL ACTIONS:

**Casias v. AMS, Inc.**        **2:14-cv-30580**

**MEMORANDUM OPINION and ORDER**

Pending before the court is nonparty Broward Outpatient Medical Center's ("Broward") Motion to Stay and for Reconsideration of the Order dated June 23, 2016. (ECF No. 92). Defendant American Medical Systems Inc. ("AMS") has filed a response to the motion, (ECF No. 94), and Broward has replied. (ECF No. 95). Accordingly, the issues are fully briefed, and oral argument would not assist in resolving the motion. Having considered the arguments of counsel, the undersigned **GRANTS** Broward's Motion. Given that Fla. Stat. § 395.301 does not appear to apply to Broward, and AMS has failed to provide any other basis in law that would require Broward to create a document responsive to its subpoena, the court finds that Broward has complied with the subpoena by producing all relevant documents.

**I.    Relevant Facts and Procedural History**

This multidistrict litigation ("MDL") involves pelvic mesh products manufactured, marketed, and distributed by AMS. The products include surgical mesh intended to be permanently implanted during operative procedures for the treatment of pelvic organ

1

prolapse and stress urinary incontinence. Plaintiffs claim, *inter alia*, that the mesh is defective, causing harm to the body and leading to complications, such as chronic pain and scarring. Consequently, some of the plaintiffs have undergone surgical procedures to revise the implanted mesh, or to remove it altogether ("corrective surgery").

In the course of discovery, AMS learned that a portion of the plaintiffs had their corrective surgeries arranged and funded through third-party funding companies. According to AMS, these arrangements were frequently complex, usually expensive, and occasionally unnecessary, as some of the plaintiffs receiving the funding had health insurance to cover similar procedures. AMS was stymied in its efforts to discover the details of the funding arrangements from the plaintiffs, who seemed to know little more about them than AMS. Confronted with a lack of transparency regarding a key element of damages, AMS began seeking information from nonparties about the third-party funding of corrective surgeries. At issue were both the cost and the medical necessity of the procedures.

In January 2016, AMS served a subpoena on Broward, in part demanding the production of certain materials, including all documents evidencing payments billed by or made to any medical service provider, product supplier, or other entity arising from a corrective surgery undergone by Plaintiff Florida Casias. Broward filed a motion to quash the subpoena or for protective order, (ECF No. 65), and AMS and Broward briefed the issues. In April, the undersigned held a hearing on the motion and ordered Broward to provide AMS with all financial documents pertaining to Ms. Casias's corrective surgery, including an itemization of the $22,000 charge incurred by Ms. Casias for the procedure. (ECF No. 77 at 1). On May 5, 2016, AMS filed a motion to compel and for contempt asserting that, in violation of the court's order, Broward had provided documentation for

$10,145.97 of the $22,000 charge to Ms. Casias, but had failed to supply any information regarding the remaining $11,854.03. (ECF Nos. 79, 80). Broward responded that it was not in contempt of the order, because it had produced all of the available documentation. In addition, Broward contended that it was not required by law to maintain an itemization of Ms. Casias's charges, and did not interpret the order to require it to create a document that did not exist. (ECF No. 81 at 1). In reply, AMS insisted that additional documentation had to exist, which would show how the remaining $11,854.03 was distributed by Broward. To that end, AMS asked the court to compel Broward to produce ledgers, books, and bank records tracking the money trail, or in the alternative, to produce a Rule 30(b)(6) witness to testify regarding the matter. (ECF No. 84).

In an effort to resolve the dispute, the undersigned entered an Order on June 23, 2016, once again confirming AMS's right to documentation demonstrating the basis of the $22,000 charge claimed by Plaintiff Casias as part of her damages. Accepting the representation of Broward's counsel that Broward had no additional documentation related to Ms. Casias's surgical charges, the court considered Broward's second argument—that it had no duty to maintain or create an itemization of the services and supplies charged to Ms. Casias for corrective surgery. The court agreed with Broward that it normally would have no obligation to create a document in order to comply with a subpoena; however, in light of Florida Statute § 395.301, the undersigned concluded that Broward had a general obligation to provide to patients like Ms. Casias an itemized statement of surgical services rendered.

The version of Florida Statute § 395.301 in effect at the time of Ms. Casias's corrective surgery provided that within seven days following a patient's discharge or release from a licensed hospital, ambulatory surgical center, or mobile surgical facility not

3

operated by the state, the facility shall, upon request, submit to a patient "an itemized statement detailing in language comprehensible to an ordinary layperson the specific nature of charges or expenses incurred by the patient, which in the initial billing shall contain a statement of specific services received and expenses incurred for such items of service, enumerating in detail the constituent components of the services received within each department of the licensed facility ..." Fla. Stat. § 395.301(1). In addition, the statute stated: "A licensed facility shall make available to a patient all records necessary for verification of the accuracy of the patient's bill within 30 business days after the request for such records," Fla. Stat. § 395.301(10), and "[e]ach facility shall establish a method for reviewing and responding to questions from patients concerning the patient's itemized bill. Such response shall be provided within 30 days after the date a question is received." Fla. Stat. § 395.301(11). Consequently, to meet the requirements of the statute, licensed facilities had to be capable of routinely preparing itemized invoices for services. The court surmised that the burden on Broward to create such a document for Ms. Casias should be negligible. Weighing the need of both Plaintiff and AMS to obtain the requested information against the perceived negligible burden to Broward to prepare such an invoice, the court ordered Broward to produce an itemization of the remaining $11,854.03 of services and supplies charged to Ms. Casias in accordance with the statute. However, the court conceded that Broward's status as a "licensed facility" was not entirely clear, and acknowledged that neither party had raised the Florida statute. Accordingly, Broward was given time to seek a stay and reconsideration of the ruling.

On July 5, 2016, Broward filed the instant motion to stay and for reconsideration. In the motion and supporting memorandum, Broward raises three arguments. First, Broward asserts that the statue does not apply to it, because Broward is not a "licensed

4

facility" under the statutory definition. (ECF No. 92 at 1). Broward advises that Ms. Casias's surgery was not performed at Broward, which is a health care clinic. Instead, the surgery was performed at Broward Outpatient Center, a separate and separately licensed ambulatory surgical center. (*Id.* at 2). Second, Broward contends that the court has no authority to compel it to create an itemized statement. In support, Broward cites to Fed. R. Civ. P. 45, *Mills v. East Gulf Coal Preparation Co., LLC,* 259 F.R.D. 118, 133 (S.D.W.Va. 2009), and *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1427 (7th Cir. 1993); although, none of these sources addresses the key issue of a court's authority to compel a nonparty to create a document for discovery process. Finally, Broward claims that the court "mistakenly" reads the Florida statute as anticipating licensed facilities to have the ability to prepare itemized statements whenever requested by patients. (*Id.* at 3-4). Broward argues that, to the contrary, when the Florida legislature placed a seven-day limit in the statute for requesting the itemization, the legislature "clearly intended to balance the interests of transparency with the burdens related to recordkeeping." (*Id.* at 4). Not surprisingly, Broward provides no case law or legislative history corroborating its otherwise unsupported statement of legislative intent.[1]

---

[1] Indeed, recent amendments to the statute, which were effective July 1, 2016 (four days before Broward filed its motion), undermine Broward's argument. Fla. Stat § 395.301(d)(1) provides:

Upon request, and after the patient's discharge or release from a facility, the facility must provide to the patient or to the patient's survivor or legal guardian, as appropriate, an itemized statement or a bill detailing in plain language, comprehensible to an ordinary layperson, the specific nature of charges or expenses incurred by the patient. The initial statement or bill shall be provided within 7 days after the patient's discharge or release ***or after a request for such statement or bill, whichever is later***. The initial statement or bill must contain a statement of specific services received and expenses incurred by date and provider for such items of service, enumerating in detail as prescribed by the agency the constituent components of the services received within each department of the licensed facility and including unit price data on rates charged by the licensed facility. The statement or bill must also clearly identify any facility fee and explain the purpose of the fee. The statement or bill must identify each item as paid, pending payment by a third party, or pending payment by the patient, and must include the amount due, if applicable. If an amount is due from the patient, a due date must be included. The initial statement or bill must direct the patient or the patient's survivor or legal guardian, as appropriate, to contact the patient's insurer or health maintenance organization regarding the patient's cost-sharing responsibilities. (emphasis added).

AMS responds to Broward's motion by asserting that Broward has no legitimate reason for refusing to provide the subpoenaed information, regardless of the applicability of the Florida statute. (ECF No. 94). AMS repeats that Broward should supply any relevant documents in its possession, and should produce a witness to testify regarding the $22,000 payment made on behalf of Ms. Casias and the manner in which it was distributed. AMS again asks for an order compelling bank statements, books, and records—*but only to the extent they currently exist*—showing how the funds paid to Broward for Ms. Casias's corrective surgery were disbursed, and to produce a Rule 30(b)(6) witness.

## II. Analysis

With respect to Broward's arguments regarding the Florida statute, the undersigned finds Broward's first argument to have merit, and its second argument to be superfluous. Given that the statute does not apply to Broward, whether or not a request for an itemized statement by Ms. Casias—and thus AMS—would be precluded by the seven-day time frame contained in the prior version of the statute is moot. The definition of "licensed facility" under the statute is "a hospital, ambulatory surgical center, or mobile surgical facility" licensed in accordance with Florida law. Fla. Stat. § 395.002(16). Broward has supplied an affidavit claiming that it is merely a health care clinic and not "a hospital, ambulatory surgical center, or mobile surgical facility." (ECF No. 92-1). AMS does not dispute the veracity or accuracy of the affidavit. Accordingly, the rationale for the court's June 23 order is no longer valid.

As to Broward's alternate argument that the court lacks authority to compel a nonparty to create an itemized statement concerning a significant element of damage—one that is essentially a blanket charge, which the nonparty assessed to and collected from

the plaintiff and which is now being tendered to the defendant—the undersigned finds Broward's position to be less persuasive. While the federal rules of civil procedure do not expressly authorize a court to take such a measure, the rules likewise do not expressly prohibit it. The rules do not squarely address the issue. Certainly, a party to litigation has no explicit right to force another party, or nonparty, to create a document for the purpose of discovery; however, courts have broad discretion in managing discovery matters. *See, e.g., Great Am. Ins. Co. v. Gross,* No. 3:05–cv–159, 2007 WL 1577503, at *14 (E.D.Va. May 30, 2007) (citing *Crawford–El v. Britton,* 523 U.S. 574, 598 (1998)). Moreover, the civil rules anticipate that documents that currently do not exist may have to be created to achieve a discovery purpose; one example is a privilege log. Nonetheless, the court need not ponder this question further, because AMS has not asked Broward to create an itemized statement and has not attempted to provide legal support for the issuance of such an order. Rather, AMS requests that Broward be compelled to produce existing information, wherever located and in whatever format, that would allow AMS to track the remaining disbursements from the $22,000 payment made to Broward. Broward has repeatedly assured the court and AMS that no such documentation exists, and AMS has produced no evidence to the contradict those assurances. As a result, there is nothing further the court can compel. At this point, AMS has evidence documenting disbursements from Ms. Casias's $22,000 payment that total $10,145.97. AMS also has evidence that the remaining sum of $11,854.03 was last documented to be in the possession of Broward, a health care clinic that seemingly had no direct involvement in the performance of Ms. Casias's surgery. Since the purpose of the court's orders has been to provide Plaintiff and AMS with documents related to the reasonableness and necessity of the charges for corrective surgery, AMS can certainly challenge that portion of the

$22,000 charge that cannot be established as reasonable, necessary, or even directly connected to the performance of corrective surgery performed on Ms. Casias.

Finally, AMS asks that the court compel Broward to produce a corporate representative for deposition pursuant to Fed. R. Civ. P. 30(b)(6). Broward contests this request on the ground that AMS has not shown a legal or factual foundation for the issuance of such an order. According to Broward, a Rule 30(b)(6) deposition was previously scheduled on a mutually convenient date and was subsequently postponed by agreement. Broward insists that it has cooperated fully with AMS in regard to scheduling a deposition. Nothing in the record indicates otherwise. Therefore, the undersigned agrees with Broward that AMS has failed to state sufficient grounds to justify an order compelling Broward to submit to a Rule 30(b)(6) deposition.

Wherefore, the court **GRANTS** Broward's Motion to Stay and Reconsider, (ECF No. 92), **SETS ASIDE** the Order entered on June 23, 2016, (ECF No. 90), and **DENIES** AMS's motion to compel and for contempt. (ECF No. 79).

The Clerk is instructed to provide a copy of this Order to counsel of record and counsel for Broward Outpatient Medical Center.

**ENTERED:** August 4, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge